IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| ADAM CLOWARD, an individual,<br><br>       Plaintiff,<br><br>v.<br><br>AYMEE RACE, JOLAYNE (JODIE) SAMPSON, D. THORNTON, individually and in their official capacities as Unified Police Department employees; ROBERT NAYLOR, individually and in his official capacity as a Salt Lake County Animal Services employee; UNIFIED POLICE DEPARTMENT and SALT LAKE COUNTY, political subdivisions of the state of Utah; and DOES 1-20, whose identities are currently unknown,<br><br>       Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING DEFENDANT NAYLOR'S MOTION TO DISMISS**<br><br>Case No. 2:20-cv-00165-RJS-DBP<br><br>Chief District Judge Robert J. Shelby<br><br>Chief Magistrate Judge Dustin B. Pead |

Before the court is Defendant Robert Naylor's Motion to Dismiss,[1] which requests dismissal of a trespass ab initio claim that was added to Plaintiff Adam Cloward's latest complaint.[2] Naylor contends dismissal of this claim is appropriate under Federal Rule of Civil Procedure 12(b)(6) because "courts have not recognized [trespass ab initio] . . . as a valid cause of action upon which relief can be granted."[3] For the reasons explained below, the Motion is GRANTED.

---

[1] Dkt. 104, *Naylor's Motion to Dismiss Third Amended Complaint*.

[2] *See* Dkt. 102, *Third Amended Complaint* at 44–48 ("Seventh Cause of Action – Trespass Ab Initio Claim").

[3] Dkt. 104 at 2.

## BACKGROUND AND PROCEDURAL HISTORY

At the motion to dismiss stage, the court accepts as true all well-pleaded factual allegations in the complaint and views them in the light most favorable to the nonmoving party.[4] The following background facts are drawn from Cloward's Third Amended Complaint.[5]

During the early evening of March 28, 2016, Cloward shot and killed his neighbor's dog.[6] He called 911 shortly thereafter, reporting "he had shot a vicious pitbull that came after him."[7] Defendants Aymee Race and Jolayne Sampson with the Unified Police Department responded, along with Salt Lake County Animal Services Officer Robert Naylor.[8] On at least these facts, the parties agree.[9] But what happened next, when Defendants arrived on the scene and began questioning Cloward, has been contested by the parties over the course of nearly three years of litigation.[10] In any event, statements were taken, firearms were seized, and Cloward was arrested and later charged with numerous criminal offenses.[11] These charges were ultimately dismissed.[12]

Nearly four years later, Cloward filed a federal civil rights complaint against Defendants Race, Sampson, and Naylor, along with the Unified Police Department, Salt Lake County, and

---

[4] *Sinclair Wyo. Ref. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021).

[5] Dkt. 102.

[6] *Id.* at 2.

[7] *Id.*

[8] *Id.*

[9] *See* Dkt. 35, *Naylor's [First] Motion to Dismiss* at 2.

[10] *See* Dkt. 37, *Cloward's Opposition to Naylor's First Motion to Dismiss* at 4 ("Naylor inaccurately alleges that . . . Cloward 'admitted to pursuing and shooting the dog.'" (citing Dkt. 35 at 5)); Dkt. 57, *Naylor's Answer to Second Amended Complaint* (generally denying Cloward's factual allegations).

[11] *See* Dkt. 102 at 2–4; Dkt. 104 at 2–4.

[12] *See* Dkt. 102 at 3 ("All of defendants['] . . . charges were dismissed . . . after nearly half a year").

twenty unidentified persons "acting within the course and scope of their employment with . . . political subdivision[s] of the State of Utah."[13]  Naylor first sought dismissal of Cloward's claims under Rule 12(b)(6) on September 10, 2020.[14]  He argued Cloward's Second Amended Complaint alleged facts giving Defendants probable cause to arrest and charge Cloward, thereby barring his claims under the doctrine of qualified immunity.[15]  The court disagreed.[16]  After hearing oral argument on March 3, 2021,[17] the court denied Naylor's First Motion to Dismiss, concluding Naylor had failed to properly assert the defense of qualified immunity as to any of the claims alleged against him.[18]

More than a year later, Cloward filed a motion requesting leave to amend his Second Amended Complaint to, among other things, "add . . . a trespasser ab initio claim, and additional claims for . . . violations of [his] . . . rights, liberty, property and[] privacy . . . ."[19]  The court eventually granted Cloward's request,[20] prompting him to file his latest pleading, the Third Amended Complaint, on August 31, 2022.[21]  Shortly thereafter, Naylor filed the instant Motion, seeking dismissal of Cloward's new trespass ab initio claim under Rule 12(b)(6).[22]  In relevant

---

[13] Dkt. 1, *Civil Rights Complaint* at 4; *see also* Dkt. 8, *First Amended Civil Rights Complaint*; Dkt. 23, *Second Amended Complaint*.

[14] Dkt. 35.

[15] *Id.* at 2, 4–9.

[16] *See* Dkt. 56, *Minute Entry for Proceedings on March 30, 2021*.

[17] Dkt. 53, *Minute Entry for Proceedings on March 3, 2021*.

[18] Dkt. 56.

[19] Dkt. 95, *Amended and Refiled Motion for Leave to Amend the Plaintiff's [Second Amended] Complaint* at 2; *see also* Dkt. 74, *Pro Se Motion for Leave to Amend the Plaintiff's [Second Amended] Complaint* at 3.

[20] Dkt. 101, *Docket Text Order Granting Cloward's Motion for Leave to Amend the Second Amended Complaint*.

[21] Dkt. 102.

[22] Dkt. 104.

part, Naylor contends "the doctrine [of trespass ab initio] is antiquated and has never been adopted by Utah courts."[23] Accordingly, he urges the court to dismiss the claim because "the Utah Supreme Court would do the same."[24]

The court first discusses the applicable legal standards before turning to the merits of Naylor's argument.

## LEGAL STANDARD

Although Cloward was represented by counsel earlier in this litigation,[25] he has proceeded pro se for the past two years.[26] Filings from pro se litigants are to be "liberally construed."[27] However, the court's liberal construction of these documents "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based."[28] Construing liberally merely allows the court to "reasonably" read a pro se pleading as stating a valid claim when there are deficiencies such as "the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."[29] It does not excuse a plaintiff's failure to

---

[23] *Id.* at 5.

[24] *Id.* at 7.

[25] *See, e.g.*, Dkt. 22, *Notice of Appearance by Peter D. Goodall*; Dkt. 25, *Notice of Appearance by Joseph H. Jardine*; Dkt. 52, *Notice of Appearance by Ronald Ball, Jr.*

[26] *See* Dkt. 82, *Notice of Pro Se Appearance*.

[27] *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citation omitted).

[28] *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[29] *Id.*

"plead a cause [of action] . . . that is legally recognized under the law of the jurisdiction providing the rule of the decision."[30]

Under Rule 12(b)(6), a cause of action that "fail[s] to state a claim upon which relief can be granted" must be dismissed.[31] To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."[32] A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[33] While plausibility does not equate to probability, it "asks for more than a sheer possibility that a defendant has acted unlawfully."[34]

When evaluating a Rule 12(b)(6) motion to dismiss, "all well-pleaded facts [are accepted] as true and view[ed] . . . in the light most favorable to the plaintiff."[35] In doing so, the court will not "weigh potential evidence that the parties might present at trial, but [will] assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted."[36] "Though a complaint need not provide detailed factual allegations, it must give just

---

[30] *McKinney v. Right at Home In-Home Care & Assistance*, No. 2:20-CV-00472-JCB, 2020 WL 7212150, at *4 (D. Utah Dec. 7, 2020) (collecting cases dismissing causes of action that were not legally recognized under state law); *see also Webb v. Smith*, 656 F. App'x 414, 415 (10th Cir. 2016) (affirming a district court's dismissal of various claims that were not recognized under Utah law).

[31] Fed. R. Civ. P. 12(b)(6).

[32] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

[33] *Id.*

[34] *Id.*

[35] *Jordan-Arapahoe, LLP v. Bd. of Cnty. Comm'rs*, 633 F.3d 1022, 1025 (10th Cir. 2011) (citation omitted).

[36] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

enough factual detail to provide [the defendant] fair notice of what the . . . claim is and the grounds upon which it rests."[37]

## ANALYSIS

In his Third Amended Complaint, Cloward seeks to dust off an early relic of English common law: the doctrine of trespass ab initio.[38] Usually traced back to the sixteenth century *Six Carpenters Case*,[39] the doctrine holds "that where one enters the premises of another under authority of law, his subsequent misconduct while there taints the entry from the beginning with illegality."[40] In 1836, the Supreme Court described trespass ab initio as a workaround to the prevailing "technical rules of pleading," which was "intended to permit a party . . . to give evidence of matters which it would be difficult or hazardous to plead specially."[41] However, by 1900, "the weight of authority ha[d] rejected trespass ab initio."[42]

Even as the doctrine of trespass ab initio was abrogated and rejected by most state courts,[43] Utah courts hardly acknowledged its existence. There is only one case, *Ercanbrack v. Clark*, where the Utah Supreme Court even mentions the doctrine—and only in dicta.[44] As an

---

[37] *Warnick v. Cooley*, 895 F.3d 746, 751 (10th Cir. 2018) (internal quotation marks omitted) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[38] *See* Dkt. 102 at 44–48.

[39] 77 Eng. Rep. 695 (1610); *see also Commonwealth v. Rubin*, 165 Mass. 453, 455–56 (Mass. 1896) (discussing the early history of the doctrine of trespass ab initio).

[40] *McGuire v. United States*, 273 U.S. 95, 98–99 (1927); *see also* Trespass, *Black's Law Dictionary* (11th ed. 2019) ("An entry on land that, though begun innocently or with a privilege, is deemed a trespass from the beginning because of conduct that abuses the privilege.").

[41] *Tracy v. Swartwout*, 35 U.S. 80, 93 (1836); *see also* Restatement (Second) of Torts § 214 cmt. e (Am. L. Inst. 1965) ("It originated in a time of strict rules of pleading, where much subsequent misconduct was not actionable in itself, and it served to afford a remedy where none was otherwise available.").

[42] Restatement (Second) of Torts § 214 cmt. e.

[43] *See id.*

[44] 8 P.2d 1093, 1094 (Utah 1932).

example of courts considering "[w]hat is trespass and what is not trespass," the *Ercanbrack* Court observed that "[f]rom early times it has been generally held . . . that a wrongful actionable tort committed after a rightful entry upon the premises may relate back and convert the original entry into a trespass ab initio."[45]  However, as Naylor notes, "the [c]ourt did not analyze trespass ab initio, explain its scope, or even apply it."[46]  As such, Utah courts have not recognized trespass ab initio as a cognizable claim under Utah law, nor have they attempted to define the scope of such a claim or its elements.

In the absence of Utah case law applying the doctrine of trespass ab initio, the court must "predict how the state's highest court would rule."[47]  "To make this prediction, 'federal courts must follow intermediate state court decisions, policies underlying the applicable legal principles, and the doctrinal trends indicated by these policies.'"[48]  When confronted with a lack of Utah precedent, the Utah Supreme Court "look[s] to guidance from other jurisdictions as well as authoritative materials."[49]  Moreover, the Utah Supreme Court recognizes "the Restatements of Torts, and cases in other jurisdictions that have interpreted the Restatements' language, as persuasive authority."[50]  In predicting how Utah's highest court would rule, the court will therefore address both the general consensus among other courts and the treatment of the doctrine by authoritative materials.

---

[45] *Id.*

[46] Dkt. 104 at 5.

[47] *Weiss v. United States*, 787 F.2d 518, 525 (10th Cir. 1986).

[48] *Ankers v. Rodman*, 995 F. Supp. 1329, 1332 (D. Utah 1997) (quoting *Weiss*, 787 F.2d at 525).

[49] *Park v. Stanford*, 2011 UT 41, ¶ 13, 258 P.3d 566 (2011) (citing *McLaughlin v. Schenk*, 220 P.3d 146 (Utah 2009) and *Utah Loc. Gov't Tr. v. Wheeler Mach. Co.*, 199 P.3d 949 (Utah 2008)).

[50] *C.R. Eng. v. Swift Transp. Co.*, 437 P.3d 343, 347 (Utah 2019).

## I. The Doctrine of Trespass Ab Initio Is Rejected by Most Courts

As noted above, the doctrine of trespass ab initio "has been rejected by the majority of courts" since the turn of the twentieth century.[51] In recent years, courts have observed that the "peculiar and anomalous fiction" of trespass ab initio is inconsistent with the modern rule that a person "is subject to liability only for . . . tortious act[s], and does not become liable for his original lawful entry."[52] Notably, "[t]he doctrine has also been repudiated in England, where it originated."[53] When confronted with a claim for trespass ab initio under Oklahoma law, the Tenth Circuit understandably expressed "serious doubts as to whether Oklahoma would recognize the doctrine," before ultimately dismissing the claim on procedural grounds.[54] Given the weight of case law rejecting trespass ab initio, it is unlikely the Utah Supreme Court would be willing to embrace—for the first time—a "doctrine . . . on its way to oblivion."[55]

## II. Trespass Ab Initio Is Widely Rejected by Authoritative Materials

Rejection of the doctrine of trespass ab initio is not limited to the courts. First contemplated by the Restatement (First) of Torts, trespass ab initio was rejected by later

---

[51] Restatement (Second) of Torts § 214 cmt. e; *Robinson v. Dean Witter Reynolds, Inc.*, 129 F.R.D. 15, 20 (D. Mass. 1989) ("Trespass ab initio has been rejected by . . . modern courts.").

[52] Restatement (Second) of Torts § 214(2); *see also Brutsche v. City of Kent*, 193 P.3d 110, 118 (Wash. 2008) (rejecting the doctrine of trespass ab initio and adopting the "modern view" set out by the Restatement (Second) of Torts § 214).

[53] *Foreign Car Ctr., Inc. v. Essex Process Serv.*, 821 N.E.2d 483, 488 (Mass. App. Ct. 2005) (citing *Chic Fashions (West Wales) Ltd. v. Jones*, 1 All E.R. 229, 236 (Q.B. 1968)).

[54] *Lawmaster v. Ward*, 125 F.3d 1341, 1352 (10th Cir. 1997).

[55] *Prosser & Keeton on Torts* § 25 (5th ed. 1984).

Restatements and "has long been denounced by legal writers as a senseless fiction."[56] Notably, the doctrine has been roundly criticized by some of the most prominent figures in Anglo-American jurisprudence—from Justice Holmes to Prosser.[57] In one treatise, the doctrine was "condemned [as a] . . . 'treacherous fiction'" devised by judges.[58] In the face of such withering criticism, the court concludes that relevant authoritative materials—from foundational legal scholarship to the Restatements—strongly disapprove of the doctrine.

For these reasons, the Utah Supreme Court would likely reject the doctrine of trespass ab initio, following the clear consensus of courts and legal scholarship. Even under the most liberal reading of the Third Amended Complaint,[59] Cloward has alleged a cause of action that is not legally cognizable under Utah law, and it must be dismissed.

## CONCLUSION

For the foregoing reasons, Naylor's Motion[60] is GRANTED.

SO ORDERED this 27th day of February, 2023.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[56] Restatement (Second) of Torts § 214 cmt. e; *see also* 75 Am. Jur. 2d *Trespass* § 51 cmt. (2023) ("[T]he doctrine of trespass ab initio has been rejected in favor of the modern rule that one who enters on or takes property under authority or license of the possessor does not become a trespasser ab initio by abusing one's authority.").

[57] *See* Restatement (Second) of Torts § 214 reporter's notes (citing critiques from Justice Harlan Fiske Stone, Justice Oliver Wendell Holmes, Sir John W. Salmond, William Lloyd Prosser, and others prominent legal scholars).

[58] *Simpson v. Phillips Pipe Line Co.*, 603 S.W.2d 307, 310 (Tex. Civ. App. 1980) (quoting 1 Harper & James, *The Law of Torts*, § 3.22 (1956)).

[59] Dkt. 102.

[60] Dkt. 104.

9